IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| T.C., ON BEHALF OF HER MINON CHILD, S.C. ) ) ) PLAINTIFF, ) ) V. ) METROPOLITAN GOVERNMENT ) OF NASHVILLE AND DAVIDSON ) COUNTY, TENNESSEE D/B/A ) METROPOLITAN NASHVILLE ) PUBLIC SCHOOLS, ) ) DEFENDANT. ) | Case No. _____ |

## COMPLAINT

Comes Plaintiff, T.C. on behalf of her minor child S.C., and brings this cause of action against Defendant, the Metropolitan Government of Nashville and Davidson County, Tennessee D/B/A Metropolitan Nashville Public Schools for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 *et seq*.

## PARTIES

1. T.C.[1] is the mother of S.C. and is a resident of Davidson County, Tennessee.

2. S.C. is a minor child in the custody of T.C. and is a resident of Davidson County, Tennessee. At the time of the events described herein, S.C. was a 15-year-old student in the ninth grade at Hunters Lane High School.

---

[1] The names of the Plaintiffs have been withheld due to the sensitive nature of the subject matter of this action. Instead, Plaintiffs' initials have been used pursuant to Fed. R. Civ. P. 5.2(a)(3). While T.C. is not a minor, her name has also been withheld to protect the identity of the minor child. The identities of the Plaintiffs will be provided to Defendant's attorney upon request.

1

3. Metropolitan Government of Nashville Davidson County Tennessee D/B/A Metropolitan Nashville Public schools is a governmental entity receiving state and federal funds to operate the Metropolitan Nashville Public School System (hereinafter "Defendant").

**JURISDICTION AND VENUE**

4. This Court has jurisdiction pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681 *et seq*.

5. Jurisdiction over the Defendant is proper as Defendant, through its school board, operates the public schools for Davidson County, Tennessee, including Hunters Lane High School. Defendant receives state and federal funding to operate Hunters Lane High School and is therefore subject to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 (a).

6. Venue is proper in that the acts complained of occurred in the Middle District of Tennessee, namely in Nashville, Tennessee at Hunters Lane High School.

**FACTS**

DEFENDANT'S OBLIGATIONS UNDER TITLE IX

7. The United States Department of Education's Office for Civil Rights ("OCR") has issued guidance documents to Defendant, including "Dear Colleague" letters, which explain a school's obligations and responsibilities under Title IX.

8. In particular, the guidance issued by the OCR includes a school's obligation to do the following:

    a. Appoint and train a Title IX coordinator and provide visibility to students and parents of the availability of such coordinator.

  b. Adopt, publish, and provide notice to students and parents of grievance procedures providing for the prompt and equitable resolution of student sex discrimination complaints.

  c. Independently investigate complaints of sexual harassment or violence, apart from any separate criminal investigation by local police.

  d. Establish appropriate disciplinary policies that do not have a chilling effect on victims' or other students' reporting of sexual harassment.

  e. Notify the complainant of his or her options to avoid contact with the alleged perpetrator(s) and allow the complainant to change academic and extracurricular activities.

  f. Take proactive measures to eliminate a hostile environment and prevent recurrence of any sexual harassment or violence.

  g. Provide age-appropriate training regarding Title IX, including training on the school's process for handling complaints.

9. At all times relevant hereto, Defendant was fully aware of its obligations under Title IX, as the OCR documents were linked on the website of Metro Nashville Public Schools, under the general heading of Policies and Procedures. These documents are attached as Exhibits 1-4.

10. Additionally, Defendant had further notice of its obligations under Title IX as Defendant was previously sued in the case of *Lopez v. Metropolitan Government of Nashville and Davidson County*, Case No. 3:07-CV-799, Middle District of Tennessee, Nashville Division, for which a consent decree was entered in 2010.

3

Case 3:17-cv-01098   Document 1   Filed 07/31/17   Page 3 of 10 PageID #: 3

DESCRIPTION OF OCCURENCE

11. On or about April 17, 2017, S.C. was pulled into an unlocked classroom and subjected to unwelcome sexual conduct by a male student.

12. This incident was videotaped on the phone of a third student who had come into the classroom unnoticed by S.C. The entire incident may well have been preplanned by the student who engaged in the unwelcome sexual activity with S.C. and the student who videotaped the activity.

13. The classroom was completely unsupervised and improperly unlocked, which provided the opportunity for the unwelcome sexual conduct to occur.

14. The administration of Hunters Lane High School was aware of the risk that sexual behavior, welcome or unwelcome, might occur if students were allowed to be in classrooms unattended.

15. The administration of Hunters Lane High School was aware that students engaged in inappropriate behavior, including making out in common areas in the presence of school staff, which was previously witnessed by T.C. while picking up S.C. from school.

16. Furthermore, the activity of videotaping sexual acts, unbeknownst to the female student involved, had previously occurred at Hunters Lane High School. In fact, this practice was so widespread within the Defendant's school system that the students nicknamed the activity "exposing" the individual involved.

17. The female student "exposed" in the videotape is commonly ridiculed as a "slut" or "whore" as the videotape is circulated within the school and ultimately on the internet.

18. The principal and administration of Hunters Lane High School became aware of the incident involving S.C. and the recording of the incident as the videotape began circulating on students' phones and on the internet.

19. The school's administration suspended the male student who participated in the unwelcome sexual activity and the student who recorded and circulated the videotape, along with S.C. herself. All three students were given a three-day suspension.

20. The Defendant's punishment of S.C., the victim in this incident, was in direct violation of the OCR's guidance against disciplinary policies that may have a chilling effect on victims' reporting and/or seeking redress for sexual harassment.

21. Even though the school administration was aware that students were circulating the videotape, such students were not effectively disciplined to prevent this type of activity from occurring and continuing. T.C. was told that the videotape was simply erased from students' phones. However, the administration did not expel or substantially punish any of the individuals involved in "exposing" S.C or in circulating the video at the school and to the public at large.

22. After the incident, a criminal investigation was begun by the local police; however, the school administration never conducted an independent investigation as required by Title IX. Instead, the administration deferred to the criminal investigation, which has a much higher threshold than a Title IX violation.

23. In compliance with regulations promulgated by OCR, Defendant had a designated Title IX coordinator on staff; however, Plaintiff was never informed of Title IX requirements, nor put in touch with the Title IX coordinator.

24. Defendant failed to adequately educate and inform the students at Hunters Lane High School of the requirements of Title IX.

25. Defendant further failed to adequately educate, warn, and properly discipline students who engaged in sexual harassment and/or sexual cyber bullying to sufficiently discourage the activity perpetrated on S.C.

26. The administration of Hunters Lane High School was aware that S.C. was subjected to vicious threats and bullying due to the videotape and the perception that S.C. instigated the minimal punishment that others received.

27. The reaction from the administration of Hunters Lane High School failed to address the issues preventing female students from obtaining an education devoid of sexual harassment and cyber bullying. Instead, the administration merely suspended the students directly involved, including the victim herself. The administration made no investigation into whether a violation of Title IX had occurred and deferred to the criminal investigation by the police.

28. S.C. was unable to return to Hunters Lane High School due to severe threats, harassment, and bullying she received as a result of the circulation of the videotape, as well as the inadequate punishment those responsible had received.

29. S.C. began to receive medical care due to the emotional toll of the continued harassment and was forced to complete her classes from home. Despite knowledge of her trauma, the administration was unhelpful in assisting S.C. in completing her coursework from home, and Plaintiff was required to go to great lengths to ensure her daughter's completion of the 2017 spring semester.

30. Throughout the summer of 2017, Defendant has made no effort to contact, much less reassure, Plaintiff that S.C. would be educated in a safe environment free of sexual ridicule and harassment. Due to the lack of contact from a Title IX coordinator and the failure of Defendant

6

to establish a plan to comply with Title IX, Plaintiff intends to homeschool S.C. for the upcoming school year.

31. S.C. continues to suffer from emotional and mental distress and will continue to receive counseling as a result.

32. S.C. believes the videotape of the incident continues to circulate in the Defendant's school system and on the internet.

**CAUSE OF ACTION**

33. Plaintiff asserts that the conduct set forth above, in paragraphs 1-32, constitutes a violation of Title IX of the Education Act of 1972, 20 U.S.C.§1681(a) *et seq*.

34. Plaintiff asserts that Defendant failed to comply with Title IX under two separate theories: (1) deliberate indifference and clearly unreasonable acts and omissions that created a hostile sexual environment to female students *before* unwelcome sexual conduct; and (2) deliberate indifference and a clearly unreasonable response *after* unwelcome sexual conduct that created an environment of continued harassment.

35. Under the first theory, Defendant failed to comply with Title IX *before* the incident at issue occurred by:

    a. Failing to educate students about Title IX.

    b. Failing to inform students of the ramifications for engaging in conduct that violated Title IX.

    c. Permitting inappropriate sexual conduct between students to occur in the presence of school staff.

    d. Creating an environment that enabled sexual conduct to occur by allowing

7

classrooms to remain unlocked and unsupervised.

    e. Failing to take appropriate action to address and curtail the practice of "exposing" individuals through malicious harassment and bullying.

    f. Failing to adequately discipline students engaged in behavior that creates a discriminatory and hostile environment for female students.

36. Under the second theory set forth above, Defendant violated Title IX *after* the incident at issue occurred by:

    a. Failing to inform Plaintiff of the requirements of Title IX.

    b. Failing to inform Plaintiff of the existence of a Title IX coordinator.

    c. Failing to conduct a Title IX investigation separate and apart from the criminal investigation.

    d. Punishing the victim, S.C.

    e. Failing to adequately punish the student who engaged in the unwelcome sexual activity.

    f. Failing to adequately punish the student who recorded and circulated the videotape of the unwelcome sexual activity.

    g. Failing to adequately punish or deter the students from circulating the videotape of the sexual activity.

    h. Failing to take adequate steps to allow the Plaintiff to complete her education in a safe environment free of sexual harassment and ridicule.

## DAMAGES

37. As a result of the Defendant's acts and omissions as set forth above, S.C. has suffered emotional injuries, including severe humiliation, embarrassment, loss of enjoyment of life, and loss of educational opportunity.

38. Plaintiff therefore seeks damages for past and future medical expenses, past and future pain and suffering, past and future emotional injuries, including severe humiliation and embarrassment, past and future loss of enjoyment of life, past and future loss of educational opportunity, and all other damages available for violations of Title IX.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. That process issue requiring the Defendant to answer within the time provided by law;

2. An award of all damages available under Title IX, including but not limited to, payment of S.C.'s expenses incurred as a consequence of the Title IX violations, damages for deprivation of equal access to the educational benefits and opportunities provided by the Defendant, and damages for past, present, and future emotional pain and suffering, ongoing and severe mental anguish, and loss of past, present, and future enjoyment of life, in the amount of $3,000,000.00;

3. Injunctive relief requiring Defendant to comply with the requirements of Title IX as outlined in the OCR's "Dear Colleague" letters and as set forth above in Paragraph 8.

4. Reasonable attorney's fees pursuant to 42 U.S.C. §1988 (b) and/or other statutory authority;

9

5. Such further relief that this Court deems proper to enforce Title IX in the Nashville Metropolitan Public School District.

Respectfully Submitted,

_s/ Stephen Crofford_____
Stephen Crofford #12039
Mary Parker #6016
**PARKER AND CROFFORD**
1230 2nd Ave. S.
Nashville, TN 37210
615-244-2445
stephencrofford@msn.com
mparker@parker-crofford.com

Attorneys for Plaintiff

10